UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GLORIOUS SHIPPING & TRADING PTE LTD.,          :
                                               :          08 CV 3304 (RWS)
                            Plaintiff,         :
                                               :          ECF CASE
         - against -                           :
                                               :
CM MINERALS GMBH,                              :
                                               :
                            Defendant.         :
--------------------------------------------------------------X

## AFFIDAVIT OF SERVICE

State of Connecticut   )
                       )      ss:      Town of Southport
County of Fairfield    )

    KEVIN J. LENNON, having been duly sworn, deposes and states the following under

oath:

    1.    I am a member in good standing of the Bar of this Court and an attorney in the

law firm of Lennon, Murphy & Lennon, LLC, which represents the interests of the Plaintiff

herein.

    2.    Notice of the Plaintiff's maritime attachment, including a copy of the Plaintiff's

Verified Complaint and all other pleadings entered in this matter, was provided to the Defendant

on or about May 30, 2008 via DHL in conformity with Local Admiralty Rule B.2. *See Exhibit 1*

*attached.*

    3    Email confirmation of the delivery of Plaintiff's notice of attachment on

Defendant was received on June 2, 2008. *See Exhibit 2 attached.*

Dated: Southport, CT
    June 2, 2008

_____
Kevin J. Lennon

Sworn to and subscribed before me this
2nd day of June 2008.

_____
Commissioner of Superior Court

# EXHIBIT 1

Lennon,
Murphy &
Lennon, LLC

A T T O R N E Y S    A T    L A W

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
phone (212) 490-6050
fax (212) 490-6070

www.lenmur.com

Tide Mill Landing
2425 Post Rd, Suite 302
Southport, CT 06890
phone (203) 256-8600
fax (203) 256-8615

mail@lenmur.com

May 30, 2008

*VIA DHL*
CM Minerals GMBH
Hinterberstrasse 24
6330 Cham 2   No. 2136
Steinhausen
Switzerland

Re:   **Glorious Shipping & Trading PTE LTD. v. CM Minerals GMBH**
      Docket Number: 08 Civ. 3304
      Our File Number: 1278-08

Dear Sir or Madam:

We represent the Plaintiff, Glorious Shipping & Trading PTE LTD., in the above referenced lawsuit. We write to advise you that pursuant to an ex parte order of maritime attachment and garnishment issued in the above referenced lawsuit, your property was attached at UBS in New York on or about May 16, 2008 in the amount of $934,767.53.

Please find attached to this letter the pleadings filed in the above referenced lawsuit including the Summons, Complaint, Affidavit in Support, Rule 7.1 Statement, Ex-Parte Order, Process of Attachment, and also the Individual Rules for Honorable Judge Robert W. Sweet.

Should you have any questions or concerns, please contact us at your convenience.

This letter is sent pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York.

Very truly yours,

Mary Fedorchak

mef/bhs
Encl.

08 CV 03304

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

GLORIOUS SHIPPING & TRADING PTE LTD.,

                                    Plaintiff,

        - against -.

CM MINERALS GMBH,

                                    Defendant.

-----------------------------------------------------------------X

ECEIVE
08 CV
APR 02 2008
ECF CASE
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, GLORIOUS SHIPPING & TRADING PTE LTD., (hereafter referred to as "GLORIOUS" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, CM MINERALS GMBH ("CM" or "Defendant"), alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the disponent owner[1] of the motor tanker vessel "SPRING HUMMER" (hereinafter the "Vessel").

---

[1] The vessel's registered owner is Allied Faith International Ltd. ("Allied"). Allied chartered the vessel to non-party Stubbs Shipping BVI (Ltd.) ("Stubbs") under time charter party dated August 27, 2004 for 3 years. The vessel was

3.    Upon information and belief, Defendant CM was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a place of business at Hinterberstrasse 24, P.O. Box 2136, 6330 Cham 2, Switzerland and was at all material times the Charterer of the Vessel.

4.    By a charter party dated September 5, 2007, Plaintiff voyage chartered the Vessel to Defendant for the carriage of a minimum of 8,000 metric tons of chrome concentrate in bulk, up to a vessel full capacity in Charterer's option, from one safe berth / safe port Paradip, East Coast of India to a discharge range of one safe berth, one or two safe ports Shanghai or Lianyungang or Qingdao or Xingang or Bayuquan, China, port in Charterer's option to be declared when vessel passing Singapore. A copy of the charter party is attached hereto as Exhibit 1.

5.    Plaintiff delivered the Vessel into the service of the Defendant and at all material times fully performed its duties and obligations under the charter party.

6.    Shortly after departing India on October 1, 2007 following loading of the Defendant's cargo of chrome concentrate in bulk it was discovered that the cargo had liquefied requiring the Vessel to return to port and re-berth in order that cargo operations could be carried out to lower the cargo moisture content thereby allowing for the vessel to safely proceed to the intended discharge port(s).

7.    Because the Vessel had to return to port and re-berth the Plaintiff thereby incurred port expenses, survey fees, expert fees and other costs and damages in connection with the

---

due to be re-delivered under the head charter party on November 9, 2007. Stubbs sub-chartered the vessel to non-party North Point on a 'back to back' basis with the head charter. North point further chartered the vessel to Plaintiff, on a 'back to back' basis, for the subject voyage charter party discussed herein. It is claimed in the alternative that Plaintiff entered into the subject voyage charter party as agents for North Point and this action is brought by, or on behalf of, North Point.

Defendant's failure to supply a safe cargo to the vessel as it was required under the contract of charter as per clause 5.

8.    During the period of time that the Vessel was detained in India for re-conditioning of the Defendant's cargo, the Plaintiff incurred hire due and payable on the Vessel and is also exposed, due to the "back to back" nature of the charter parties involved on the Vessel, to the Vessel head owner's claim for port expenses, labor and equipment charges incurred in re-conditioning the Defendant's cargo, legal fees, survey fees and expert fees.

9.    The Vessel's head owner has also claimed additional damages due to the extended duration of the charter party which may have caused a loss of increased hire based upon the charter party rate versus market rate since the vessel was re-delivered to the head owner later than it would otherwise have been re-delivered but for the Defendant's breach of contract in supplying a dangerous cargo to the vessel. In sum, and as outlined in a letter received from counsel for the Vessel's head owner, Plaintiff has been presented with a claim of $1,196,913.04 all of which is due to the Defendant's breach of contract. Please see counsel letter dated December 24, 2007 attached hereto as Exhibit 2.

10.    Plaintiff seeks indemnity over and against the Defendant for any liability it may have to the Vessel's head owners for damage and costs as set forth above.

11.    As a result of Defendant's breach of the charter party, Plaintiff has sustained damages and costs which as best as may be presently approximated in the total principal amount of $228,858.00 exclusive of interest, arbitration costs and attorneys' fees all of which is exclusive to the exposure to vessel's head owner for which indemnity is sought.

12.    Alternative to the exposure to the Vessel's head owner for which indemnity is sought herein, Plaintiff also seeks recovery of damages from the Defendant for the Vessel

3

detention in Paradip by virtue of the clause 49 of the subject charter party. As best as may be presently estimated, detention damages are $300,000 based on the fifty (50) days spent at Paradip from October 1, 2007 to November 19, 2007 at the daily detention rate of $6,000.

13.     Pursuant to the charter party, disputes between the parties are to be submitted to arbitration in Hong Kong, with English law to apply. See box 25 and clause 19 of the charter party. Plaintiff has commenced arbitration by notifying Defendant of its appointment of an arbitrator. Please see Plaintiff's notice attached hereto as Exhibit 3.

14.     This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

15.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in Hong Kong arbitration conducted pursuant to English law. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim: | $228,858; |
| B. | Indemnity for head owner's claim[2]: | $1,196,913.04; |
| | *Alternative detention claim:  $300,000* | |
| C. | Interest on claim (2 years at 6.5% compounded quarterly) | $196,241.68; |
| | *Interest on principal claim and alternative claim (2 years at 6.5% compounded quarterly):  $65,909.53* | |
| D. | Estimated arbitration costs: | $100,000; and |
| E. | Estimated attorneys' fees and expenses: | $240,000.00. |
| Total[3]: | | $1,962,012.72. |

---

[2] Head owners have demanded approximately USD $1.2M as damages from Plaintiff for the various items of damages and loss stated in Paragraph 8 incurred by reason of Defendant's breach of charter party. See Exhibit 2.
[3] Alternative total claim of $934,767.53.

4

16.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

17.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $1,962,012.72 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received

or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.    That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

G.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:    New York, NY
          March 31, 2008

                        The Plaintiff,
                        GLORIOUS SHIPPING & TRADING PTE LTD.

                        By: _____
                        Anne C. LeVasseur
                        Kevin J. Lennon
                        LENNON, MURPHY & LENNON, LLC
                        420 Lexington Avenue, Suite 300
                        New York, NY 10170
                        (212) 490-6050 – phone
                        (212) 490-6070 – facsimile
                        acl@lenmur.com
                        kjl@lenmur.com

6

## ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss.:    City of New York
County of New York   )

1.    My name is Kevin J. Lennon

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am a partner in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          March 31, 2008

                                        Kevin J. Lennon

7

# EXHIBIT 1

**A 5.1**

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 AND 1974)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "G E N C O N"

**Part I**

1.  Shipbroker

V. SHIPS PAREKH MARINE (INDIA) PVT. LTD.
215, "KRIZZNA BUILDING"
7TH FLOOR, 224 A.J.C BOSE ROAD,
KOLKATA – 700017, WEST BENGAL, INDIA
TEL: +91-33-2389-5255/5256
FAX +91-33-2389-6259

| 2. Place and date |
| --- |
| KOLKATA, INDIA – 05.09.2007 |

3.  Owners/Place of business (CL 1)

DEPONENT OWNERS:
GLORIOUS SHIPPING & TRADING PTE LTD
20 GUL ROAD SINGAPORE #29345

4.  Charterers / Place of business (CL 19)

OM MINERALS GMBE
HINTERBERSTRASSE 24
P.O.BOX 7196, 6330 CHAM 2
SWITZERLAND

5.  Vessel's name (CL 1)
MV SPRING HUMMER

| 6. GT/NT (CL 1) |
| --- |
| 8015 / 3172 |

7.  DWT all told on summer load line in metric tons (abt.) (CL 1)
8634 MT ON 7.815 M

8.  Present position (CL 1)
NOW TRADING

9.  Expected ready to load (abt.) (CL 1)
ON 16TH SEPTEMBER 2007

10. Loading port or place (CL 1)

1 SBP PARADIP, EAST COAST OF INDIA

11. Discharging port or place (CL 1)

1SB, 1/2 SP SHANGHAIGOU LIANYUNGANG OR (ENGLOAD OR XINGANG OR BAYUQUAN , CHINA , PORT IN CHARTERERS OPTION TO BE DECLARED WHEN VSL PASSING SINGAPORE.

12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (CL 1)

MIN 8,000 MT CHROME CONCENTRATE IN BULK , UPTO VESSEL FULL CAPACITY IN CHARTERERS OPTION .
( SEE RIDER CLAUSE 21 )

13. Freight rate (also state whether freight prepaid or payable on delivery) (CL 4)
SEE RIDER CLAUSE 28

14. Freight payment (state currency and method of payment; also beneficiary and bank account) (CL 4)

SEE RIDER CLAUSE 33

15. State if Vessel's cargo handling gear shall not be used (CL 5)
TO BE USED AT BOTH ENDS

16. Laytime (if separate laytime for load, and disch. is agreed, fill in a) and b). If total laytime for load and disch., fill in c) only) (CL 6)

a) Laytime for loading
SEE RIDER CLAUSE 29

17. Shippers/Place of business (CL 6)

b) Laytime for discharging
SEE RIDER CLAUSE 30

18. Agents (loading) (CL 3)
OWNERS AGENT AT LOAD PORT AT OWNER'S COST.

c) Total laytime for loading and discharging
SEE RIDER CLAUSE 29, 30.

19. Agents (discharging) (CL 6)
OWNERS AGENTS AT DISCHARGE PORT AT OWNER'S COST.

20. Demurrage rate and manner payable (loading and discharging) (CL 7)

DETENTION AT LOAD PORT / DISCH PORT : SEE RIDER CLAUSE 40

21. Cancelling date ( CL 9 )

25.59 HOURS INDIAN STANDARD TIME 25TH SEPTEMBER 2007.

22. General Average to be adjusted at (CL 12)
LONDON , ENGLISH LAW TO APPLY ( SEE RIDER CLAUSE 42 )

23. Freight Tax (state if for the Owners' account (CL 13 (c))
TO BE ON OWNERS ACCOUNT BOTH ENDS ( SEE RIDER CLAUSE 48 )

25. Law and Arbitration (state 19(a), 19(b) or 19(c) of CL 19; if 19(c) agreed also state Place of Arbitration) (if not filled in 19(a) shall apply) (CL 19)

19(a)
HONGKONG , ENGLISH LAW TO APPLY ( SEE RIDER CLAUSE 42 )

24. Brokerage commission and to whom payable (CL 15)
OWNERS TO PAY:-
2.50 PCT ADDRESS COMMISSION TO CHARTERERS ON FREIGHT/ DEAD FREIGHT / DETENTION.
AND
1.25 PCT BROKERAGE TO V.SHIPS PAREKH MARINE (INDIA) PVT. LTD, KOLKATA ON FREIGHT / DEAD FREIGHT /DETENTION.

(a) State maximum amount for small claims/shortened arbitration (CL 19)
MAX SMALL CLAIM PROCEDURE TO FOLLOW FOR CLAIM UPTO USD 50,000-00/ SEE RIDER CLAUSE 43 )

26. Additional clauses covering special provisions, if agreed.
Rider Clauses 29 to 16 both inclusive is attached in this charter party are deemed to be fully incorporated and form part of this charter party.

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Copyright, published by The Baltic
and International Maritime
Conference (BIMCO), Copenhagen

| Signature(s) (Owners) | Signature(s) (CHARTERERS) |
| --- | --- |
|  | |

Printed and sold by Fr. G. Knudtzon Ltd., 55 Toldbodgade, DK - 1253 Copenhagen K, Telefax +45 33 93 11 84
by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen

PART II
"GENCON" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the Party mentioned in Box 3 ... Owners of the Vessel named in Box 5 ...

2. Owners' Responsibility Clause

3. Deviation Clause

4. Payment of Freight ( SEE RIDER CLAUSE 33 )

5. Loading/Discharging ( SEE RIDER CLAUSE 19 & 20 )
   (a) Costs/Risks
   (b) Cargo Handling gear
   (c) Stevedore damage ( SEE RIDER CLAUSE  41 )

6. Laytime ( SEE RIDER CLAUSE  29, 30 AND  )

7. Demurrage/Detention ( SEE RIDER CLAUSE 40 )

8. Lien Clause

9. Cancelling Clause
   (a) Should the Vessel not be ready to load ...
   (b)

10. Bills of Lading ( SEE RIDER CLAUSE  26 AND 37 )

11. Both-to-Blame Collision Clause

PART I

"GENCON" Charter (As Revised 1922, 1976 and 1994)

PART II
"GENCON" Charter (As Revised 1922, 1976 and 1994)

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND
## CM MINERALS GMBH DATED 05.09.2007

20. PERFORMING VESSEL :

MV. "SPRING HUMMER"
HONG KONG FLAG, BLT 1995,
DWT 8,634MT ON 7.815M,
GRT/NRT 8,015/3,172T.
LOA/BEAM/DEPTH 109.98/20.2/13.2M, BALE CAPA 15,014M3,
2H/2H, CLASS NK,
RO/RO - BOX TYPE TWEEN DECKER WITH RAMP WAY
LOWER HOLD: SEMI BOX TYPE,
STERN RAMP: 18.5 X 5.5M ~ 30T X 1 SET,
SIDE MOUNTING CRANES 2 X 30T.
HATCH SIZES: NO.1 & NO.2: 30 X16.2M
ALL DETAILS ABOUT

DISPONENT OWNERS : GLORIOUS SHIPPING & TRADING PTE LTD.
          20 GUL ROAD SINGAPORE 629345


CLASS / VALIDITY : NK / 27.02.2010
P AND I CLUB / ENTRY DATE : WEST OF ENGLAND / 20.01.2007
H+M INSURER / VALIDITY : PICC PROPERTY AND CASUALTY COMPANY
LIMITED / 21 SEPTEMBER 2007.
H+M VALUE : USD7,500,000.

FULL ITINERARY PROVIDED BY OWNERS ASF :-

| | |
|---|---|
| - ETA MUMBAI | 3/SEP 1500LT |
| - ETD MUMBAI | 10-11/SEP |
| - ETA PARADIP | 16-17/SEP |
| - ABV SUBJ AGW & WP. | |


OWNERS GUARANTEE   : THE SAID VESSEL IS GUARANTEED BY THE
OWNERS AS BEING TIGHT, STAUNCH AND IN EVERY WAY FIT FOR THE
VOYAGE, AND SHALL WITH REASONABLE SPEED PRODUCE TO DISCHARGE
PORT(S) AS MENTIONED IN BOX NO. 11. HOWEVER, OWNER'S LIABILITIES
UNDER THIS CHARTER PARTY SHALL NEVER BE GREATER THAN THOSE
IMPOSED BY THE HAGUE – VISBY RULES.

THE VESSEL WILL MAINTAIN HER CLASS THROUGHOUT THE DURATION OF
THIS CHARTER AND UNTIL COMPLETION OF DISCHARGE OF THE ENTIRE
CARGO. THE VESSEL TO BE FREE FROM ENCUMBRANCES OR CLAIM OR
DETENTION OF WHATSOEVER NATURE AND IS FREE TO TRADE BETWEEN
THE SAID PORTS UNDER THE CURRENCY OF THIS CHARTER AND THE

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

OWNERS ARE TO BE FULLY RESPONSIBLE OF ANY LOSS OF TIME DUE TO VESSEL'S DETENTION / ARREST FOR ANY REASON OF NON PAYMENT OF PORT DUES AT DISPORT, CREW WAGES, CLASS, MAINTENANCE, FLAG REGISTRATION, BUNKER PAYMENT, AGENCY DUES ETC., OWNERS UNDERTAKE THAT THE VESSEL IS FREE OF SUCH LIABILITY DURING THE TENANCY OF THIS CHARTER PARTY.

OWNERS TO GUARANTEE THAT THE VESSEL IS NOT BLACK LISTED BY THE LOAD PORT AND DISPORT AUTHORITIES AND ALSO FREE OF LIEN AND ARREST, SHOULD THE VESSEL BE FOUND BLACK-LISTED UPON ARRIVAL AT THE LOAD PORT OR DISPORT, OWNER TO BEAR ALL DIRECT AND CONSEQUENTLY LOSSES, DAMAGES ARISING THEREFROM AND DELAYS WITHOUT ANY RESPONSIBILITY TO THE CHARTERERS, SHIPPERS OR RECEIVERS.

21. QUANTITY – MIN 8,000 MT CHROME CONCENTRATE IN BULK , UPTO VESSEL FULL CAPACITY IN CHARTERERS OPTION .

CARGO GRADE DETAILS TO BE ADVISED AS VESSEL HAS ONLY 2 HOLDS / HATCHES , LOADING SEQUENCE AS PER MASTER / OWNERS ACCEPTANCE AND STOWAGE AND CHARTERERS ARE RESPONSIBLE FOR COSTS OF SEPARATION OF DIFFERENCE GRADES OF CARGOES.

NO GUARANTEE FROM OWNERS FOR NATURAL SEPARATION IN CASE OF MORE THAN ONE GRADE OF CARGO AS 2 HOLDS /HATCHES.

CARGO GRADES :

OPTION 1 ) LOADING OF 2 GRADES OF ( A ) 5'500 MT + (B ) 2'500 MT WHICH CAN BE LOADED IN BOTH HOLDS ,ONE AFTER THE OTHER ,AND TWO GRADES CAN BE MIXED.

OPTION 2) LOADING OF 2 GRADES ( C) 5'500 MT + ( D} 2'500 MT WHICH WOULD HAVE TO BE KEPT/STOWED SEPARATELY ( ARTIFICAL SEPARATION ) BY MEANS OF WOODEN BULKHEAD AND/OR TARPAULINS AT CHARTERERS COST AND TIME.

· IN CASE OF CARGO SEPARATION ARRANGED BY CHARTERERS/SHIPPERS/THEIR AGENTS BY WOODEN BULKHEAD AND/OR TARPAULINS , OWNERS SHALL NOT BE RESPOSIBLE FOR THE MIXING/CONTAMINATION OF DIFFERENCE GRADES OF CARGOES.

OWNERS / MASTER SHOULD ALLOW FOR ABOVE OPTION 1) AND OPTION 2) AT CHARTERERS OPTION.

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

22. LOAD PORT - 1 SBP PARADIP ,EAST COAST OF INDIA.

23. SHIFTING AT LOAD AND DISCHARGE PORT :

TIME AND COST OF SHIFTING FROM CUSTOMARY REPORTING PLACE OR ANCHORAGE TO WORKING BERTH AS THE CASE MAY BE , TO BE ON OWNERS ACCOUNT BOTH ENDS.

ANY SHIFTING BETWEEN BERTHS AT LOAD PORT TO BE FOR CHARTERERS ACCOUNT UNLESS SAME CAUSED DUE TO VESSEL RELATED PROBLEMS.

ANY SHIFTING BETWEEN BERTHS AT DISCHARGE PORT TO BE FOR CHARTERERS ACCOUNT UNLESS SAME CAUSED DUE TO VESSEL RELATED PROBLEMS

24. OWNERS GUARANTEE THAT VESSEL HAS ALL VALID CERTIFICATES ON BOARD TO CALL THE PORTS UNDER THE CURRENCY OF THE FIXTURE NOTE AND TO MAINTAIN TILL THE COMPLETION OF VOYAGE.

25.OWNERS GUARANTEE THAT FOLLOWING : -

A) ALL GEARS OF VESSEL ARE IN GOOD WORKING CONDITION IS CAPABLE OF WORKING UPTO VESSEL'S SAFE WORKING CAPACITY DECLARED BY OWNERS.

B) VESSEL IS CAPABLE FOR LOWERING PAYLOADER INSIDE THE HOLDS AND CAPABLE OF PAYLOADER OPERATION INSIDE THE HOLDS WITH OUT ANY OBSTRUCTIONS.THE WEIGHT OF PAYLOADER SHOULD NOT EXCEED TANKTOP STRENGTH OF VESSEL.

OWNERS' GUARANTEE THAT THERE ARE NO CENTERLINE BULKHEAD IN CARGO HOLDS.

C) DELETED

SHOULD THERE BE ANY REQUIREMENT OF SHORE CRANES DUE TO FAILURE OF THE VESSL'S GEARS TO LIFT CARGO UPTO SAFE WORKING CAPACITY DECLARED BY OWNERS THEN SHORE CRANES HIRE CHARGES, ARRANGEMENT TO BE FOR OWNERS ACCOUNT BOTH ENDS.

26. LAYCAN : 16TH SEPTEMBER – 23RD SEPTEMBER ,2007.

27. DISCHARGE PORT ( S ) - 1SB , 1/ 2 SP SEANGHAI OR LIANYUNGANG OR QINGDAO OR XINGANG OR BAYUQUAN ,CHINA , PORT IN CHARTERERS OPTION TO BE DECLARED WHEN VESSEL IS PASSING SINGAPORE.

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

28. FREIGHT :

USD 41 PMT FIOST BSS 1/1 .

ADDITIONAL USD 2.5 PMT ON ENTIRE CARGO FOR 1 / 2 BASIS.
IF TWO DISCHARGE PORT (S) ALWAYS IN GEOGRAPHICAL ROTATION , IF ANY.

29. LOAD RATE – CQD

30. DISCHARGE RATE – CQD

OWNERS WILL PROVIDE ALL THE GEARS ALL TIME DAY AND NIGHT FOR LOADING AND DISCHARGING THROUGH OUT THE WORKING PERIOD AND ALSO PROVIDE SUFFICIENT LIGHT FOR NIGHT WORKING ALL TIME DAY AND NIGHT THROUGH OUT THE WORKING PERIOD FREE OF COST TO CHARTERERS / SHIPPER / RECEIVERS BOTH ENDS.

31. PORT AND DRAFT CONDITION AND RESTRICTIONS OWNERS RESPONSIBILITY BOTH ENDS IF VESSEL IS NOT ACCEPTABLE BY PORT AUTHORITIES DUE TO VESSELS CLASS / FLAG / AGE / P AND I THEN CHARTERER'S WILL NOT BE RESPONSIBLE BOTH ENDS, OWNERS TO ARRANGE ACCEPTANCE OF THE VESSEL WITH PORT AUTHORITIES AT BOTH ENDS.

32. LIGHTERAGE / LIGHTENING IF ANY AT CHARTERERS / RECEIVERS OPTION TO BE FOR CHARTERERS / RECEIVERS ACCOUNT BOTH ENDS. LIGHTERAGE AND LIGHTERS DUE TO DRAFT RESTRICTION TO BE FOR OWNERS ACCOUNT BOTH ENDS.

33. FREIGHT PAYMENT : 100 PERCENT FREIGHT LESS COMMISSIONS TO BE PAID WITHIN 3 BANKING DAYS AFTER COMPLETION OF LOADING AND SIGNING / RELEASING OF CLEAN MATE'S RECEIPT AND SIGNING / RELEASING FIRST SET CLEAN BILL(S) OF LADING MARKED AS " CLEAN ON BOARD" AND "FREIGHT PAYABLE AS PER CHARTER PARTY" AND UPON RECEIPT OF FREIGHT INVOICE FROM OWNERS AS STATED ABOVE BY FAX OR E-MAIL.
FULL FREIGHT DEEMED TO BE EARNED BY OWNERS UPON CARGO LOADED ON BOARD THE VESSEL, DISCOUNTLESS, NON-RETURNABLE, WHETHER CARGO AND/OR VESSEL LOST OR NOT LOST.

34. OWNERS / MASTER / OWNERS AGENT AGREE TO SIGN/RELEASE FIRST SET BILLS OF LADING AT LOAD PORT PARADIP OR IN KOLKATA AT OWNERS COST MARKED AS "CLEAN ON BOARD" AND" FREIGHT PAYBALE

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

AS PER CHARTER PARTY BILLS OF LADING " AND/ OR AT CHARTERERS OPTION "CLEAN ON BOARD" AND "FREIGHT PREPAID" BILLS OF LADING ONLY AFTER RECEIVING TELEGRAPHIC TRANSFER REMITTANCE SWIFT COPY OF CHARTERERS BANK EVIDENCING THAT 100 PERCENT FREIGHT LESS COMMISSIONS HAS BEEN REMITTED TO OWNERS NOMINATED BANK ACCOUNT BY FAX OR E-MAIL.

35. OWNERS / MASTER / OWNERS AGENT TO SIGN/RELEASE 3/3 MATE'S RECEIPT ( CANNOT BE CLAUSED ) IMMEDIATELY UPON COMPLETION OF LOADING TO SHIPPER AND TO BE SURRENDERED TO OWNERS AGENT AT LOAD PORT PARADIP OR IN KOLKATA ( CHOPT ) AFTER 30 DAYS OF THE VESSEL'S SAILING FROM LOAD PORT.

36. OWNERS / MASTER / OWNERS AGENT TO SIGN/RELEASE SECOND SET BILLS OF LADING, IF ANY, WITHOUT SURRENDERING THE FIRST SET BILLS OF LADING SHOWING DIFFERENT SHIPPER / RECEIVERS, FREIGHT PREPAID AND OTHER MINOR CHANGES SUCH AS NOTIFY PARTY / DESCRIPTION OF GOODS ETC.,SUBJECT TO OWNERS APPROVAL, AGAINST CHARTERER'S LOI ON THEIR LETTERHEAD AS PER OWNERS P AND I WORDING IN KOLKATA ( CHOPT ) AT OWNERS COST.CHARTERERS' TO SURRENDER FIRST SET BILLS OF LADING AFTER 30 DAYS FROM THE SIGN/RELEASE OF SECOND SET BILLS OF LADING TO CHARTERERS .

37. BILLS OF LADING TO BE USED CONGEN BILL 1994.

38. OWNERS CAN APPOINT THEIR P AND I SURVEYOR FOR CARGO INSPECTION BEFORE AND DURING THE LOADING AND ANY CARGO REJECTION TO BE AT HOOK POINT ONLY AND BEFORE LOADING.
ANY INSPECTION WILL BE JOINT WITH SHIPPERS' SURVEYOR AND JOINT SURVEY REPORT TO BE TREATED AS FINAL BINDINGS TO BOTH PARTIES.

39. NOTICE OF READINESS :

MASTER/OWNERS/THEIR AGENTS TO TENDER NOTICE OF READINESS IN WRITING UPON VESSEL'S ARRIVAL AT LOAD PORT WITH CLEAN AND DRY HOLDS AND IN ALL RESPECT READY TO LOAD THE CARGO AND AT DISCHARGE PORT BEING ALL RESPECT READY TO DISCHARGE HER CARGO ANY TIME DAY AND NIGHT SUNDAY HOLIDAYS INCLUSIVE WWWW PROVIDED FREE PRATIQUE AND CUSTOMS CLEARNCE IS NOT PREVENTED FROM CREW SICKNESS AND/ OR VESSEL'S DEFAULT.

40.DETENTION TO APPLY US$ 6,000 PER DAY PRO RATA IF CARGO / DOCS / FORMALITIES ARE NOT READY BOTH ENDS .

PROVEN AND MUTUALLY AGREED DETENTION IF ANY AT LOAD PORT AND DISCHARGE PORT TO BE SETTLED WITHIN 10 DAYS AFTER

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

COMPLETION OF DISCHARGE AT THE FINAL DISCHARGE PORT AND UPON RECEIPT OF CLAIM INVOICE ALONG WITH SUPPORTING DOCUMENTS FROM OWNERS BY FAX TO CHARTERERS .

### 41. STEVEDORE DAMAGE :

IF ANY DAMAGE IS CAUSED TO THE VESSEL AT THE LOADING PORT AND DISCHARGING PORT BY THE STEVEDORES BEYOND ORDINARY WEAR AND TEAR , THE CLAIM IF ANY,FOR SUCH DAMAGE SHALL BE SETTLED DIRECTLY BETWEEN THE OWNERS AND STEVEDORES. THE MASTER OF THE VESSEL SHALL LODGE SUCH CLAIMS, IF ANY, ON THE STEVEDORES WITHIN 24 HOURS AFTER THE DAMAGE HAS BEEN SUSTAINED PRIOR TO THE DEPARTURE OF THE VESSEL FROM THE LOADING OR DISCHARGING PORT, FAILING WHICH THE CLAIM SHALL STAND BARRED AND STEVEDORES SHALL STAND ABSOLVED AND RELIEVED OF ALL RESPONSIBILITY, SUBJECT TO COMPLIANCE WITH THE CONDITIONS ENUMERATED IN THIS CLAUSE.IN CASE THE STEVEDORES FAIL TO SETTLE THE SAME, CHARTERERS SHALL ENDEAVOUR BEST TO INTERVENE AND ASSIST OWNERS TO SETTLE SUCH CLAIMS AT THE EARLIEST.

### 42. FORCE MEAJURE :

SHOULD THE SHIPPERS AT THE LOADPORT AND THE RECEIVERS AT THE DISCHARGE PORT BE PREVENTED FROM LOADING/DISCHARGING THE VESSEL OR FROM PERFORMING THEIR OBLIGATONS IN ACCORDANCE WITH THE TERMS OF THIS CHARTER PARTY BY WAR / BLOCKADE, REVOLUTION, RIOTS, ACTS OF GOD OR ON ACCOUNT OF CAUSES BEYOND THE SELLERS / PURCHASERS CONTROL ESTABLISHED AS DIRECTLY RETARDING PRODUCTION,SHIPMENT OR UNLOADING, THE TIME LOST DURING PENDENCY OF SUCH CAUSES SHALL NOT BE CONSIDERED AS LAYTIME, AND SHIPMENT FROM SUCH PORTS SHALL BE POSTPONED BY PERIOD DURING WHICH CONDITIONS PREVENT SHIPMENT. ALL SUCH CAUSES SHALL HAVE A CAUSATIVE EFFECT AND SHOULD. AFFECT COMPARABLE VESSELS CONCURRENTLY DISCHARGING/LOADING AT THE SAME PORT. THE AGGRIEVED PARTY SEEKING RELIEF SHOULD INTIMATE THE OTHER PARTY WITHIN 4 DAYS OF SUCH OCCURRENCE.

### 43.GENERAL AVERAGE AND ARBITRATION IN HONGKONG IN ACCORDANCE WITH " HONGKONG MARITIME ARBITRATION CLAUSE " AND ENGLISH LAW TO APPLY.

SMALL CLAIMS PROCEDURE AS PER LMAA TO FOLLOW FOR ALL CLAIMS UPTO US$ 50,000.00.

### 44.OVER AGE PREMIUM : NO OAP.

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

45.OWNERS NOMINATED AGENT AT LOAD PORT AND DISCHARGE PORT - OWNERS TO ADVISE CHARTERERS.

46.OWNERS / MASTER / THEIR AGENT TO GIVE 7/5/4/3/2 AND 24 HOURS ARRIVAL NOTICE TO CHARTERERS' / SHIPPERS' / RECEIVERS' BOTH AT LOAD AND DISCHARGE PORT.
OWNERS / MASTER TO KEEP CHARTERERS POSTED REGARDING VESSEL'S POSITION EVERY ALTERNATIVE DAY THROUGH OUT THE VOYAGE.
OWNERS / OWNERS AGENT TO GIVE MINIMUM CLEAR 5 WORKING DAYS AFTER OWNERS / OWNERS AGENT DECLARE THE VESSEL TO PORT AND DECLARE THE EXPORT ROTATION NO TO SHIPPER AND CHARTERER.

NOTICES TO BE GIVEN FOR LOAD PORT , DISCHARGE PORT AND THROUGH OUT THE VOYAGE :

1) chartering@vshipparekh.com

47. CARGO TO BE RELEASED AGAINST ORIGINAL 2ND SET BILLS OF LADING ONLY.IN ABSENCE OF ORIGINAL 2ND SET BILLS OF LADING AT DISCHARGE PORT UPON ARRIVAL OF THE VESSEL & TENDERING NOTICE OF READINESS, OWNERS / MASTER AGREE TO DISCHARGE AND DELIVER ENTIRE CARGO TO RECEIVER ( S ) AGAINST CHARTERERS AND RECEIVERS SIMPLE LOI ON THEIR LETTERHEAD AS PER OWNERS P AND I WORDING.

48. TAXES /DUES / WHARFAGE WHATSOEVER ON VESSEL AND FREIGHT TO BE FOR OWNERS ACCOUNT BOTH ENDS.

TAXES /DUES / WHARFAGE WHATSOEVER ON CARGO TO BE FOR CHARTERERS ACCOUNT BOTH ENDS.

49. BILLS OF LADING CARGO QUANTITY TO BE ASCERTAINED BY DRAFT SURVEY TO BE CONDUCTED BY MASTER IN THE PRESENCE OF CHARTERER / SHIPPER/RECEIVER'S SURVEYOR AT LOAD PORT AND DISCHARGE PORT,SHIPPER/CHARTERERS / RECEIVERS WILL APPPOINT THEIR OWN SURVEYOR AT THEIR COST.

50.OPENING AND CLOSING OF HOLDS AND HATCHES TO BE PERFORMED BY VESSEL'S CREW AT LOAD AND DISCHARGE PORT.AT OWNERS ACCOUNT PROVIDED THE SAME IS PERMITTED BY LOCAL PORT / LABOUR REGULATIONS OTHERWISE ON CHARTERERS ACCOUNT.

51. DELETED

52. DELETED

## RIDER CLAUSES OF CHARTER PARTY FOR MV SPRING HUMMER AND CM MINERALS GMBH DATED 05.09.2007

MECHANICAL GRABS IF REQUIRED TO BE ARRANGED BY CHARTERERS AT THEIR COST FOR LOADING AND DISCHARGING.

53. TOTAL COMM : OWNERS TO PAY ADDRESS COMMISSION : 2.50 PCT TO CHARTERERS + BROKERAGE 1.25 PCT TO V.SHIPS PAREKH MARINE (INDIA) PVT.LTD. ON FREIGHT / DEAD FREIGHT / DETENTION .

54. CHARTERERS / SHIPPERS / RECEIVERS HAVE THE LIBERTY TO WORK DURING ANY EXCEPTED PERIODS AND MASTER TO ALLOW WORK TO BE DONE, OVERTIME, IF ANY, TO BE FOR THE ACCOUNT OF PARTY ORDERING THE SAME, INCLUDING ANY SHORE EQUIPMENT COSTS IF ANY BUT VESSEL OFFICERS AND CREW'S OVERTIME SHALL ALWAYS BE FOR OWNERS ACCOUNT.

55. CHARTER PARTY TERMS SHALL ALWAYS SUPERSEDE BILLS OF LADING TERMS, WHEN EVER CONTRADICTORY

56. THE TERMS AND CONDITIONS OF THIS CONTACT TO BE TREATED STRICTLY CONFIDENTIAL AND ARE NOT TO BE DISCLOSED TO ANY THIRD PARTY.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*X\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**GLORIOUS SHIPPING & TRADING PTE LTD**
AS DISPONENT OWNER
DATE : 05.09.2007

**CM MINERALS GMBH**
AS CHARTERER
DATE : 05.09.2007

# EXHIBIT 2

24-DEC-2007  17:07  FROM  INCE & CO                    TO  28101345              P.01

# Fax

Partners
AWV Chan
RGY Law
PJ Murray*
OJ Reaves**
M Crose
KCK Lee
/JT Hirst
P Ho*

Consultant
JJ Latham

Non-lawyer
VC Xu

*Non-resident partner
**Notary Public

INTERNATIONAL
LAW FIRM

Rm. 3801-6, 38th Floor
ICBC Tower, Citibank Plaza
3 Garden Road
Hong Kong

Tel +852 2877 3221
Fax +852 2877 2633
www.incelaw.com

Please contact ext 110 immediately if any part of this transmission is incorrectly received.

| From | Our Ref | Date |
|---|---|---|
| Rosita Lau/Simon Cheng (in the absence of Roy Chan) | RL/SC(RC) (07.9972) | 24 December 2007 |
| To | Attention | |
| Dibb Lupton Alsop | Anthony Wu | Your Ref |
| Total number of pages | Town/Country | |
| 5 | HK | Fax Number |
| Copies to | Attention/Ref | 2310 3345 |
| | | Town/Country/Fax Number |

Matter

MV "SPRING HUMMER" – Charterparty dated 27 August 2004

We refer to our previous communication in this matter.

We confirm that we for the Owners of MV "Spring Hummer" (the "Vessel") in respect of the dispute between our respective clients under the captioned charterparty ("Charterparty"), in particular, those relating to the loading of a cargo of chrome concentrate in bulk at the port of Paradip ("the Cargo"). The Cargo was loaded at your clients' and/or your clients' shippers/sub-charterers' arrangement.

We are instructed that the Cargo loaded at the port of Paradip in or about September 2007 was dangerous and not suitable for carriage by the Vessel because the Cargo contained excessive moisture content which exceeded its TML level. The Master and the Chief Officer had protested in respect of the unsuitability of the Cargo as early as 2115 hours on 28 September 2007, but your clients insisted that the Cargo was safe and that the Vessel should continue to load such Cargo. Following the Master's insistent and repeated demands and requests, your clients submitted to our clients two cargo declarations which purported to state that the moisture content of the Cargo was lower than its TML level, in consequence of which the Master and our clients had no alternative but to allow your clients to continue with the loading of the Cargo.

26073



24 December 2007

However, following the completion of the Cargo loading process and shortly after the Vessel had set sail, the Master noticed that there was excessive quantities of free water emitted from the Cargo which sloshed violently from side to side as the Vessel rolled during sailing. This situation created by the dangerous nature of the Cargo severely affected the natural rolling properties of the Vessel and endangered the stability of the Vessel at sea. Under such circumstances the Master considered that it was unsafe for both the Vessel and his crew to continue with the voyage and accordingly gave order on 2nd October 2007 for the Vessel to return to the loading port.

We are instructed that during a joint inspection of the Cargo conducted at Paradip on 16th October 2007 at which your client's surveyors/agents had also participated, it was found that the inherent moisture content of the Cargo was in excess of its TML level, which findings was contrary to the representations made in the said cargo declarations. We are further instructed that according to the opinion and lab testing reports obtained from our client's expert subsequently, the TML level of the Cargo was much lower than that as stated in the said cargo declarations submitted by your clients, and the actual moisture content of the Cargo would have exceeded its TML level. Accordingly, the cargo declarations and the representation contained therein relating to the moisture content/TML level of the Cargo were therefore false and misleading, and amount to misrepresentation and misstatements.

It is clear that the Cargo provided by your clients was of a dangerous nature and our clients were entitled to refuse further compliance with your client's orders and instructions to carry it as the continuing carriage of the same severely affects the stability and safety of the Vessel as well as the lives of those on board the Vessel. The Master had informed your client on the position in which the Vessel was in. The Master had no better alternative but had to order the Vessel to return to the loading port by reason of there being an accident or accident to the Cargo which was caused by your clients' order to ship such dangerous cargo and for which your clients, as Charterer of the Vessel, is fully responsible.

Notwithstanding the above, however, we are instructed that in breach of the Charterparty, your clients had (i) wrongfully declared the Vessel off-hire and (ii) refused and failed to pay hire to our clients from 0545 hours, 1 October 2007 to 1700 hours on 19 November 2007. Our clients have been demanding your clients for payment of the unpaid hire and we refer to all our clients' written demands to you to date. Despite repeated demands, your clients continue to refuse and/or fail to pay hire of the said period to our clients pursuant to the terms of the Charterparty.

24-DEC-2007  17:08    FROM  INCE & CO                    TO  29101345                P.03



24 December 2007

Upon the return to the loading port, the Vessel had to wait for a suitable berth for the discharge of the excessive water from the cargo holds. Our clients on the other hand had incurred substantial costs and expenses in dealing with the port authority in order to gain access to their port facilities, in arranging the removal of the water emitted from the Cargo. Our clients also had incurred costs and expenses on the cargo survey. Whilst awaiting for those to be carried out, additional bunkers had to be purchased for the Vessel at our clients' expense due to insufficient bunkers on board. Our clients had suffered serious losses and damages as a result of your clients' further breach of the Charterparty by their provision of the Cargo that was unsafe and dangerous for carriage on board the Vessel.

We are further instructed that the Vessel should have been re-delivered to our clients on 9 November 2007. Due to the aforesaid incident, the date of re-delivery of the Vessel had to be postponed to 10 December 2007. Due to the increase of the market rate in hire at the present buoyant shipping market, our clients also suffered loss in their earning of hire at the prevailing higher market rate from 9 November 2007.

We are instructed that our clients' losses suffered so far include but are not limited to the followings:-

(1)    Unpaid Charter Hire of USD518,795.53 which comprises the followings:-

    (a)    Unpaid charter hire of USD301,357.69 for 49 days, 11 hours and 15 minutes (i.e., 49.46875 days) from 0545 hours, 1 October 2007 to 1700 hours, 19 November 2007 at the rate of USD6,091.88 per day.

$$49.46875 \times 6,091.88 = USD301,357.69$$

    In this respect, we refer to all the charter hire demands from our client to your clients. Our clients are very disappointed at that the charter hire remains unpaid despite repeat demands by our clients and our clients objected that the Vessel was on off-hire from hours on 1 October 2007 to 1700 hours on 19 November 2007.

    (b)    Loss of charter hire difference of USD217,437.84 for 31 days, 11 hours and 25 minutes (i.e. 31.47569 days) from 0650 hours, 9 November 2007 to 1725hours, 10 December 2007 at the rate of USD6,908.12 per day.

$$31.47569 \times USD6,908.12 = USD217,437.84$$

3

24-DEC-2007  17:05  FROM  INCE & CO                TO  28101345              P.24



24 December 2007

According to the Charterparty, the Vessel should have been re-delivered to our clients by 9 November 2007. However, as a result of the cargo problem at the loading port, the Vessel was only re-delivered on 10 December 2007. There was a delay of over 31 days accordingly. The charter hire rate at the market as of 9 November is approximately and not less than USD13,000 per day. The difference between the prevailing market charter hire rate and the hire under the Charterparty is USD6,908.12 per day (i.e., USD13,000 - USD6,091.88 / per day).

(2)  The expenses deducted by Charterers in the sum of <u>USD21,142.20</u> which consists of the followings:-

    (a)  Entertainment / victualling of USD1,978.75

    (b)  Estimated bunker consumed of USD19,163.45

(3)  the port due and agency fees paid by our clients at the port of Paradip: USD38,322.00

(4)  Costs for arranging the berthing of the Vessel at the port of Paradip: USD50,228.00

(5)  Additional bunkers purchased by our clients (MDO): <u>USD33,870.93</u>

The MDO on board of the Vessel was running low due to the long delay at Paradip. Our clients had requested your clients to supply additional MDO but your clients declined such request. In the circumstances, our clients had no alternative but to arrange for local supplies of MDO at USD1,118 per ton.

USD1,118 × 30.296 MT = USD33,870.93

(6)  Fees (including transportation, accommodation and meals...etc expenses) charged by our clients' appointed port captain at the loading port, who was engaged to find a suitable berth at Paradip with the local port authority as well as to deal with matters relating to the Cargo between 24 October 2007 and 30 October 2007: <u>USD4,304.38.</u>

(7)  Estimated expert charges including expenses such as transportation, accommodation etc between 6 October and 29 October not less than <u>USD150,000.00</u> (approximately) (subject to confirmation of final figure).

4

24-DEC-2007  17:08  FROM  INCE & CO            TO  28101245            P.05



24 December 2007

(8)    Estimated Vessel Surveyor's charges between 29 October 2007 and 19 November 2007 including the UK laboratory charges: not less than USD150,000.00 (approximately) subject to confirmation of final figure.

(9)    Estimated legal costs incurred by our clients: USD230,000.00 (approximately). Such costs are accumulating and continuing unless and until your clients had compensated our clients in full.

The total sum claimed by our clients at present is US$1,196,913.34 and our clients reserve all their right to revise the aforesaid amounts claimed.

Please take this letter as our clients' formal demand to your clients that your clients are to settle our clients' claims in the sum of US$1,196,913.04 within 7 days from the date of this letter failing which our client will resort to legal proceedings against your client, by then our client's claim will include interest as well.

We urge your clients to be sensible and settle our clients' demand in full without further delay.

Regards,

Ince & Co

162573

6

# EXHIBIT 3

## Kevin J. Lennon

| From: | sudipguria@vsnl.net |
|---|---|
| Sent: | Monday, December 24, 2007 11:41 AM |
| To: | kingstar@hkstar.com; patrick_lyh@hotmail.com |
| Cc: | chartering@vshipsparekh.com |
| Subject: | Fw: M.V. "Spring Hummer" - C/P dated 5 September 2007 - 8,000 MTchromeconcentrate loaded at Paradip |

Attachments: Terms (2007).doc

DATE : 24.12.2007 @ 2210 HRS INDIAN TIME

TO : Kingstar Shipping Limited - MR PATRICK LEE and Glorious Shipping & Trading Pte. Ltd

FM : V.SHIPS PAREKH MARINE - KOLKATA - SUDIP GURIA

PLS FIND BELOW MSG RCVD FORM CHRTS CMM REGARDING NOMINATION OF ARBITRATOR FORM CHRTS SIDE.

qte

—— Original Message ——
To: V.Ships Parekh Marine - Sudip Guria
Cc: M.Thomson@kennedys.com.hk ; philip-yang@cimail3.com
Sent: Monday, December 24, 2007 5:14 PM
Subject: Re: M.V. "Spring Hummer" - C/P dated 5 September 2007 - 8,000 MT chrome concentrate loaded at Paradip

SUDIP GURIA / CARLO MANZI

With ref to the msg below, pls pass on following reply to Kingstar Shipping Limited and Glorious Shipping & Trading Pte. Ltd, and confirm when sent (latest 25.12.07).

quote

TO: KINGSTAR SHIPPING LIMITED
TO: GLORIOUS SHIPPING & TRADING PTE. LTD.

Re: M/V SPRING HUMMER - C/P dated 5th September, 2007

Dear Sirs,

We refer to your message of 13th of December 2007 (Ref. No.: HWKS-07E7847) advising us of your appointment of Mr. Philip YANG as your arbitrator as per clause 43 of the C/P dated 5th of September 2007 and we hereby appoint Mrs. Mary Thomson as our arbitrator in the arbitration proceedings initiated by you.

Mrs. Thomson's details are as follows:

Mrs. Mary Thomson
Kennedys
11th Floor
The Hong Kong Club Building
3A Chater Road
Central
Hong Kong
Tel: +852 2848 6339
Fax: +852 2848 6333
email: M.Thomson@kennedys.com.hk

Further we hereby notify you of our appointment of Mrs. Mary Thomson
(details as above) as our arbitrator as per clause 43 of the C/P dated 5th
of September 2007 in relation to our claim to you (as indicated in our
e-mail dated 23rd of December 2007) for various breaches of your C/P
obligations related to issuing a second set of Bills of Lading as per
clause 36 of the C/P and for illegally lienting (part of) the cargo of
chrome concentrates and for refusing to instruct your agent at discharge
port to release the (non-liened part of) the cargo to the rightful
receivers. The value of this claim at present is estimated at 2.5 million
USD with full reserves as to further amend, detail, adjust, increase or
decrease this amount as and when necessary.

You are requested to appoint your arbitrator concerning our claim to you
within 14 days failing which we shall appoint Mrs. Thomson as the sole
arbitrator in this reference without further notice.

We join herewith Mrs. Thomson's terms of appointment for your guidance.

Best regards
CM MINERALS GMBH
Carlo Manzi


Cc:
Mrs. Mary Thomson (M.Thomson@kennedys.com.hk)
Mr. Philip Yang (philip-yang@ctlmail3.com

unquote

This and brgds
Carlo Manzi

unqte

brgds
as brokers only


----- Original Message -----
From: V.Ships Parekh Marine - Sudip Guria
Cc: PMA - KOLKATA
Sent: Thursday, December 13, 2007 10:32 AM
Subject: M.V. "Spring Hummer" - C/P dated 5 September 2007 - 8,000 MT chrome concentrate loaded at

Page 3 of 4

Paradip

TO : CM MINERALS - MR. CARLO MANZI / SUDIP

DEAR SIR,

BELOW MSG RCVD FORM KINGSTAR, FOR YOUR REPLY.


QTE

--- Original Message ---
Sent: Thursday, December 13, 2007 2:49 PM
Subject: Re: M.V. "Spring Hummer" - C/P dated 5 September 2007 - 6,000 MT chrome concentrate loaded at Paradip

Ref. No.: HWKS-07E7347


To: V.Ships Parekh Marine (India) Pvt. Ltd., Kolkata
Attn: Mr. Sudip Guria / Mr. Deepak Doshi

Cc: West of England, Hong Kong
Attn: Ms. Anna Mok

Fm: Kingstar Shipping Limited

Re: M.V. "Spring Hummer" - C/P dated 5 September 2007
__3,000 MT chrome concentrate loaded at Paradip__

We refer to our email Ref. No.: HWKS-07E7341 dated 21 November 2007 regarding our claims against Charterers which was rejected by Charterers in their message on 22 November 2007.

We have today appointed Mr. Philip Yang as our arbitrator in accordance with clause 43 of the charter. Mr. Yang's details as follows:-

Philip Yang & Co Ltd
Unit A, 18/F., Casey Building
38 Lok Ku Road
Hong Kong
Tel: 852 2544 1909
Fax: 852 2545 6079
Email: philip-yang@ctimail3.com

You are requested to appoint your arbitrator within 14 days failing which we shall appoint Mr. Yang as the sole arbitrator in this reference without further notice.

We look forward to hearing from you.

1/31/2008

Patrick Lee
Operations Department
As agents only

UNQTE

BRGDS
AS BROKERS ONLY



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

GLORIOUS SHIPPING & TRADING PTE LTD.,

                Plaintiff,

   - against -

CM MINERALS GMBH,

              Defendant.

--------------------------------------------------------------X



### DISCLOSURE OF INTERESTED PARTIES
### PURSUANT TO FEDERAL RULE 7.1

     Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure to enable judges and

magistrates of the court to evaluate possible disqualification or recusal, the undersigned attorney

of record for the Plaintiff certifies that the Plaintiff does not have any corporate parent nor is

there any publicly held corporation that owns 10% or more of its stock.

Dated: April 2, 2008
      New York, New York

                   The Plaintiff,
                   GLORIOUS SHIPPING & TRADING PTE LTD.

                   By: _____

                   Arne C. LeVasseur
                   Kevin J. Lennon
                   LENNON, MURPHY & LENNON, LLC
                   The Gray Bar Building
                   420 Lexington Ave., Suite 300
                   New York, NY 10170
                   (212) 490-6050 phone
                   (212) 490-6070 fax
                   acl@lenmur.com
                   kjl@lenmur.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GLORIOUS SHIPPING & TRADING PTE LTD.,          :

            Plaintiff,          :

   - against -          :

CM MINERALS GMBH,          :

            Defendant.          :
-----------------------------------------------------------------X

08 CV 3304 (RWS) (MHA)

ECF CASE

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut )
             ) ss: Town of Southport
County of Fairfield )

    Kevin J. Lennon, being duly sworn, deposes and says:

    1.    I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

    2.    I have attempted to locate the Defendant, CM MINERALS GMBH, within this

District. As part of my investigation to locate the Defendant within this District, I checked the

telephone company information directory, as well as the white and yellow pages for New York

listed on the Internet or World Wide Web, and did not find any listing for the Defendant.

Finally, I checked the New York State Department of Corporations' online database which

showed no listings or registration for the Defendant.

3.       I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.       Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.       This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.       Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson, Coleen A. McEvoy or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendants.

7.       Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendants.

8.     To the extent that this application for an Order appointing a special process server, with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.     Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

-3--

Dated:        March 31, 2008
              Southport, CT

Kevin J. Lennon

Sworn and subscribed to before me
this 31st day of March 2008.

NOTARY PUBLIC

−4−

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____  District of _____ New York _____

Glorious Shipping & Trading Pte. Ltd.

## SUMMONS IN A CIVIL ACTION

V.

CM Minerals GmbH

CASE NUMBER:

08 CV 03304

JUDGE SWEET

TO: (Name and address of Defendant)

CM Minerals GmbH
Hinterberstrasse 24
P.O. Box 2136
6330 Cham 2
Switzerland

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Lennon, Murphy & Lennon, LLP
420 Lexington Avenue
Suite 300
New York, NY 10170

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

APR 02 2008

CLERK

DATE

(By) DEPUTY CLERK

%AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER (PRINT) | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                        Date                              Signature of Server

_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

08 CV 3304 (RWS)(MHD)

Docket no.

## THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the Marshal of the Southern District of New York (or designated process server) - GREETINGS:

WHEREAS a Verified Complaint has been filed in the United States District Court for the Southern District of New York on the 2nd day of April 2008 by

### GLORIOUS SHIPPING & TRADING PTE LTD.,

Plaintiff,

against

### CM MINERALS GMBH,

Defendant,

in a certain action for breach of maritime contract and indemnity wherein it is alleged that there is due and owing from the Defendant to the said Plaintiff the amount $934,767.53 and praying for process of maritime attachment and garnishment against the said Defendant.

WHEREAS, this process is issued pursuant to such prayer and requires that a garnishee(s) shall serve their answer(s), together with answers to any interrogatories served with the Complaint, within 20 days after service of process upon him and requires that Defendant shall serve its answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

NOW, THEREFORE, we do hereby command you that if the said Defendant cannot be found within the District you attach goods and chattels to the amount sued for; and if such property cannot be found that you attach other property, credit and effects to the amount sued for in the hands of:

ABN Amro, American Express Bank, Bank of America, Bank of China, Bank of Communications, Bank of New York Mellon, BNP Paribas, Barclay's Bank, Citibank, Calyon, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Societe Generale, Standard Chartered Bank, UBS, Wachovia Bank N.A. and/or Wells Fargo

to wit: property, letters of credit, deposits, funds, credits, bills of lading, debts, settlement agreements, or other assets, tangible or intangible, in whatever form of:

### CM MINERALS GMBH

and that you promptly after execution of this process, file the same in this court with your return thereon.

WITNESS, the Honorable Robert W. Sweet, Judge of said Court, this __4__ day of April 2008, and of our Independence the two-hundred and thirty-second.

Lennon, Murphy & Lennon, LLC
Attorneys for Plaintiff
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
Phone (212) 490-6050

J. MICHAEL McMAHON
Clerk

By
Deputy Clerk

### CERTIFIED AS A TRUE COPY ON

NOTE: *This Process is issued pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and/or New York Civil Practice Law and Rules, Article THIS DATE*

BY
Clerk
Deputy

ɩ·d



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 04-04-08

GLORIOUS SHIPPING & TRADING PTE LTD.,

        Plaintiff,

  - against -

CM MINERALS GMBH,

        Defendant.

:  08 CV 3304 (RWS) (MHd)

:  ECF CASE

:  **EX PARTE ORDER**
:  **FOR PROCESS**
:  **OF MARITIME**
:  **ATTACHMENT**

WHEREAS, on April 2, 2008 Plaintiff, GLORIOUS SHIPPING & TRADING PTE

LTD., filed a Verified Complaint, herein for damages amounting to $934,767.53 inclusive of

interest, costs and reasonable attorneys' fees, and praying for the issuance of Process of Maritime

Attachment and Garnishment pursuant to Rule B of the Supplemental Admiralty Rules for

Certain Admiralty and Maritime Claims of the Federal Rules and Civil Procedure; and

WHEREAS, the Process of Maritime Attachment and Garnishment would command that

the United States Marshal, or other designated process server, attach any and all of the

Defendant's property within the District of this Court; and

WHEREAS, the Court has reviewed the Verified Complaint and the Supporting

Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist;

NOW, upon motion of the Plaintiff, it is hereby:

ORDERED, that pursuant to Rule B of the Supplemental Rules for Certain Admiralty

and Maritime Claims, the Clerk of the Court shall issue Process of Maritime Attachment and

Garnishment against all tangible or intangible property, credits, letters of credit, bills of lading,

effects, debts and monies, electronic funds transfers, freights, sub-freights, charter hire, sub-

charter hire or any other funds or property up to the amount of $934,767.53 belonging to, due or



MICROFILMED

APR - 4 2008 ~3:00 PM

p.2

being transferred to, from or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named on whom a copy of the Process of Maritime Attachment and Garnishment may be served; and it is further

**ORDERED** that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further

**ORDERED** that following initial service by the U.S. Marshal, or other designated process server, upon each garnishee, that supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or other verifiable electronic means, including e-mail, to each garnishee; and it is further

**ORDERED** that service on any garnishee as described above is deemed to be effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service is further deemed to be effective through the end of the next business day, provided that another service is made that day; and it is further

**ORDERED** that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means.

Dated: April  1, 2008

SO ORDERED:

U.S.D.J.

CERTIFIED AS A TRUE COPY ON

THIS DATE  04-0408

BY

Clerk
Deputy

October 5, 2007

## INDIVIDUAL PRACTICES OF JUDGE ROBERT W. SWEET

Unless otherwise ordered by Judge Sweet, matters before Judge Sweet shall be conducted in accordance with the following practices:

### 1. Communications with Chambers

**A. Letters.** Except as otherwise provided below, communications with chambers shall be by letter, with copies simultaneously delivered to all counsel. Copies of correspondence between counsel shall not be sent to the Court.

**B. Telephone Calls.** In addition to Paragraph 1(D) below, telephone calls to chambers are permitted. For matter other than docketing, scheduling or calendar matters, call chambers at (212) 805-0254.

**C. Faxes.** Faxes to chambers are permitted only if copies are also simultaneously faxed or delivered to all counsel. No document longer than 10 pages may be faxed without prior authorization. Do not follow with hard copy. The fax number is: (212) 805-7925.

**D. Docketing, Scheduling, and Calendar Matters.** For docketing, scheduling and calendar matters, call Tsz (pronounced "ZEE") Chan at (212) 805-0124.

**E. Requests for Adjournments or Extensions of Time.** All requests for adjournments or extensions of time must state: (1) the original date; (2) the number of previous requests for adjournment or extension; (3) whether these previous requests were granted or denied; and (4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order (reflecting only business days) must be attached. If the request is for an adjournment of a court appearance, absent an emergency, it shall be made at least 48 hours prior to the scheduled appearance.

### 2. Motions.

**A. Pre-Motion Conferences in Civil Cases.** Pre-motion conferences are not required.

**B. Courtesy Copies.** One courtesy copy of all motion papers, including electronically-filed motion papers, should be submitted to chambers. Each courtesy copy shall be prominently marked as such.

**C. Memoranda of Law.** Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages. Memoranda of 10 pages or more shall contain a table of contents.

**D. Filing of Motion Papers.** Motion papers shall be filed promptly after service.

**E. Oral Argument on Motions.** Oral argument will be held on all motions, with the exception of: (1) motions for reconsideration or reargument, pursuant to Local Civil Rule 6.3; and (2) motions by or against a party proceeding pro se. Oral argument will be held on Wednesday at noon and motions shall be made returnable accordingly.

**F. Orders to Show Cause.** Applications for orders to show cause, provisional remedies, emergency relief or to proceed in forma pauperis, and orders and notice of settlement of judgments, shall be presented to the Orders and Appeals Clerk. Judgments shall be presented to the Judgment Clerk. These documents will be examined as to form and thereafter transmitted to chambers.

## 3. Pretrial Procedures

**A. Joint Pretrial Orders in Civil Cases.** Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery in a civil case, the parties shall submit to the Court for its approval a joint pretrial order, which shall include the following:

    i. The full caption of the action.

    ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel.

    iii. A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.

    iv. A brief summary by each party of the claims and defenses that party has asserted which remain to be tried, without recital of evidentiary matter but including citations to all statutes relied on. Such summaries shall identify all claims and defenses previously asserted which are not to be tried.

    v. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed.

    vi. A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

    vii. Any stipulations or agreed statements of fact or law which have been agreed to by all parties.

2

viii. · A statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition.

ix. A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party.

x. A list by each party of exhibits to be offered in its case in chief, with one star indicating exhibits to which no party objects on grounds of authenticity, and two stars indicating exhibits to which no party objects on any ground.

**B. Filings Prior to Trial in Civil Cases.** Unless otherwise ordered by the Court, each party shall file, 15 days before the date of commencement of trial if such a date has been fixed, or 30 days after the filing of the final pretrial order if no trial date has been fixed:

i. In jury cases, requests to charge and proposed voir dire questions. Two courtesy copies, marked as such, should be submitted to chambers. Proposed jury charges should also be submitted by e-mail; contact chambers by phone to obtain the appropriate e-mail address.

ii. In nonjury cases, a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element;

iii. In all cases, motions addressing any evidentiary or other issue which should be resolved in limine; and

iv. In any case where such party believes it would be useful, a pretrial memorandum.

3

# EXHIBIT 2

## Kevin J. Lennon

| | |
|---|---|
| **From:** | Mary E. Fedorchak |
| **Sent:** | Monday, June 02, 2008 8:27 AM |
| **To:** | Kevin J. Lennon |
| **Subject:** | FW: Delivered_Shipments |

| | |
|---|---|
| **TimeMattersID:** | M66849ACAEF93589 |
| **TM Matter No:** | 1278-07 |
| **TM Matter Reference:** | Glorious Shipping & Trading v. CM Minerals |

FYI
Attachment Notice for Glorious matter - Delivered.

-----Original Message-----
From: Worldwide_Express_Email_Notifier [mailto:support@wwexship.com]
Sent: Monday, June 02, 2008 8:01 AM
To: Mary E. Fedorchak; logs@wwexship.com
Subject: Delivered_Shipments

Our records indicate that the following shipment was delivered to:

CM MINERALS GMBH
STEINHAUSEN    ,    00000

| | |
|---|---|
| Tracking Number: | 8907378222 |
| Account Number: | 803172641 |
| Shipment Reference: | 1278 |
| Shipment Description: | Legal Documents |
| Delivery Date/Time: | 06/02/08 10:02 |
| Signed/Released by: | SIG ON FILE |

Click here for more tracking info:
http://track.dhl-usa.com/atrknav.asp?ShipmentNumber=8907378222