UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

GLORIOUS SHIPPING & TRADING PTE LTD.,          08 Civ. 3304

                Plaintiff,          OPINION

    -against-

CM MINERALS GMBH,

                Defendant.

------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/30/10

A P P E A R A N C E S:

        Attorneys for Plaintiff

        CHALOS & CO, P.C.
        123 South Street
        Oyster Bay, NY  11771
        By:  George M. Chalos, Esq.

        Attorneys for Defendant

        MCDERMOTT & RADZIK, LLP
        Wall Street Plaza
        88 Pine Street
        New York, NY  10005-1801
        By:  Edward C. Radzik, Esq.
             Crystal G. Moroney, Esq.

**Sweet, D.J.**

Defendant CM Minerals GMBH (the "Defendant" or "CM Minerals") has moved pursuant to Rule E(4) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure to vacate the attachment obtained by plaintiff Glorious Shipping & Trading PTE, Ltd. (the "Plaintiff" or "Glorious Shipping"), to release the funds attached and to dismiss the complaint for lack of jurisdiction. On the facts and conclusions set forth below, the motion is granted, the attachment vacated, the funds released and the complaint dismissed.

## Prior Proceedings

On March 31, 2008, Plaintiff filed its complaint in accordance with the ex parte maritime attachment and garnishment procedures provided by Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure. Through its complaint, Plaintiff sought, inter alia, to attach and garnish any of Defendant's property in this district up to and including $1,962,012.72. The underlying dispute between Plaintiff and Defendant relates to a Charter Party Agreement that requires disputes between

1

the parties to be submitted to arbitration in Hong Kong, with English law to apply.

An Order of Attachment was issued on April 2, 2008, authorizing the attachment and garnishment of property in this district belonging to Defendant, up to the requested amount of $1,962,012.72.  Pursuant to the Order of Attachment, $934,767.53 was attached while being routed as an electronic fund transfer ("EFT") through the New York branch of UBS AG ("UBS New York"), an intermediary bank. On June 13, 2008, the Court ordered UBS New York to pay the attached funds into the Registry of the District Court.

Defendant filed a Restricted Notice of Appearance on September 13, 2008 and an Answer and Counterclaim on February 3, 2009.  Following the postponement of several court conferences, a pretrial conference was held on December 9, 2009.

The instant motion was heard and marked fully submitted on January 27, 2010.

2

**Jaldhi Requires Vacatur**

In The Shipping Corporation of India Ltd. v.
Jaldhi Overseas Pte Ltd., 585 F.3d 58, 71 (2d Cir. 2009),
the Second Circuit held that EFTs being processed by an
intermediary bank in New York are not subject to Rule B
attachment. The Second Circuit has clearly stated that
Jaldhi is to have retroactive effect, and the Court is not
at liberty to depart from that holding. See Hawknet, Ltd.
v. Overseas Shipping Agencies, 590 F.3d 87, 91 (2d Cir.
2009) ("[T]he rule announced in [Jaldhi] has retroactive
effect to all cases open on direct review . . . ."); Calais
Shipholding Co. v. Bronwen Energy Trading Ltd., No. 07 Civ.
10609 (PKL), 2009 WL 4277246, at *4 (S.D.N.Y. Nov. 24,
2009) ("This Court is bound by the Second Circuit's
determination that EFTs are not attachable property under
Rule B and that this change in the law applies
retroactively.").

Courts in this district have rejected the
argument that transferring funds attached as EFTs into
separate holding accounts converts those funds into
attachable property under Rule B. See, e.g., HC Trading
Int'l Inc. v. Crossbow Cement, SA, No. 08 Civ. 11237, 2009

3

WL 4337628, at *1 (S.D.N.Y. Dec. 2, 2009) ("No alchemy by
the parties transformed EFTs that do not provide personal
jurisdiction over the defendant under Rule B into a basis
for this Court's jurisdiction over the defendant."); Gloria
E.N.E. v. Korea Line Corp., No. 08 Civ. 2490 (JGK), 2009 WL
4016615, at *1 (S.D.N.Y. Nov. 16, 2009) ("No alchemy by the
bank transformed EFTs that cannot be attached into property
of the defendant that can be attached."). Moreover, in a
case where EFTs were transferred into the Registry of the
Court in accordance with Rule E(5) of the Supplemental
Admiralty Rules of the Federal Rules of Civil Procedure and
28 U.S.C. § 2464, the Court held that "[the defendant] did
no more than post a bond in lieu of the EFTs; it did not
voluntarily or independently possess property in the
District." Global Maritime Invs. v. Companhia Siderurgica
Nacional, No. 08 Civ. 11199 (SAS), 2009 WL 4730196, at *2
(S.D.N.Y. Dec. 9, 2009).

        The Declaration of Karl Hans Manzi, CM Minerals'
Managing Director, demonstrates that the attached funds
originated as EFTs routed from CM Minerals' bank in Lugano,
Switzerland to CM Minerals' cargo suppliers' accounts in
Albania. (See Decl. of Karl Hans Manzi, dated Jan. 14,
2010 ("Manzi Decl.") ¶ 3.) Without any direction or

                              4

control on the part of CM Minerals, the funds were routed
through intermediary banks — UBS New York and American
Express Bank — in New York.  (Manzi Decl. ¶ 4.)

CM Minerals does not maintain an account at UBS
New York nor does it possess a U.S. Dollar account at any
banks in the United States.  (Manzi Decl. ¶ 9.)

Contrary to the Plaintiff's contention, the
placement of funds into the Registry of the Court by UBS
New York does not cure the underlying jurisdictional defect
or permit Plaintiff to "reattach" once the funds are
deposited with the Court.  See HC Trading, 2009 WL 4337628,
at *1; Global Maritime Invs., 2009 WL 4730196, at *2;
Kolman Group A.G. v. TRAXPO Enters. Private Ltd., No. 07
Civ. 10343 (LAK), 2009 WL 6353885, at *1 (S.D.N.Y., Nov.
18, 2009) ("[The] attached funds were not validly 're-
attached' once they were transferred into suspense accounts
upon this Court's order of attachment.").

The deposit of funds into the Court's Registry
was done without the knowledge or consent of CM Minerals.
See Hansa Sonderburg Shipping Corp. v. Hull & Hatch
Logistics LLC, No. 09 Civ 7164 (LTS) (S.D.N.Y. Nov. 16,

5

2009) (unreported) ("Because the original attachment was improper, the deposit of the funds into a segregated account, absent the consent of the defendant, did not cure the problem addressed in [Jaldhi]. The legal character of the funds did not change when they were deposited." (emphasis added)). Unlike the defendants in Transfield ER Cape Ltd. v. Crownland Int'l Co., Ltd., No. 08 Civ. 8602 (VM) (S.D.N.Y. Oct. 28, 2009) (Order) (unreported) and Europa Maritime v. Manganese Trans Atl. Corp., 08 Civ. 9523 (DAB) (S.D.N.Y. Nov. 10, 2009) (unreported), CM Minerals did not enter into any stipulation or agreement with anyone to deposit the funds representing the attached EFTs into the Court's Registry. By contrast, in the instant action the garnishee bank acted unilaterally by petitioning the Court for leave to deposit the funds.

        Plaintiff's argument that the Court should follow the New York Supreme Court, Appellate Division's holding in Palestine Monetary Authority v. Strachman ("PMA"), 62 A.D.3d 213 (N.Y. App. Div. 2009), is unavailing. PMA's holding with respect to the immunity enjoyed by intermediary banks who choose to honor creditor processes does not bear on the question of whether New York law permits attachments by intermediary banks. See id. at 227-

6

28.  In fact, PMA itself held that only the banks involved
in an EFT transaction possess a property interest in an
EFT.  Id. at 228-30; see also Deval Denizcilik Ve Ticaret
A.S. v. Schenker Italiana, No. 09 Civ. 0367 (DC), 2009 WL
5179015, at *3 (S.D.N.Y. Dec. 23, 2009).

Defendant's EFTs were deposited into the Court's
Registry by garnishee, UBS New York, without Defendant's
knowledge or consent and have been restrained for more than
eighteen months.  To prolong the attachment and permit
discovery as to the nature of the funds and the
relationship between CM Minerals and the garnishee,
particularly when these facts have already been
established, would be extremely prejudicial to CM Minerals.
Plaintiff's request to continue the attachment pending
discovery is declined.

It is appropriate to vacate the attachments
without the requested discovery in view of the established
facts.

**Upon Release of the Funds, the Complaint
Is Dismissed for Lack of Jurisdiction**

In Jaldhi, the Second Circuit described the

jurisdictional limits in Rule B attachment proceedings as

follows:

> In Rule B attachment proceedings,
> jurisdiction is predicated on the
> presence within the court's territorial
> reach of property in which the Rule B
> defendant has an interest. Because of
> the requirement that the defendant not
> be "found" within the district where
> the action is brought, Rule B
> contemplates that a court will lack in
> personam jurisdiction over the
> defendant when it orders that a writ of
> attachment be issued. In such a
> proceeding, the court's coercive
> authority is coterminous with the scope
> of its jurisdiction, and limited to the
> extent of the defendant's interest in
> the attached property; that authority
> does not extend to the exercise of in
> personam jurisdiction over a Rule B
> defendant.

585 F.3d at 69 n.12 (citations omitted). Thus, under

Jaldhi and Hawknet, once the funds representing the

attached EFTs are released, "for the District Court

properly to maintain personal jurisdiction in this case,

the Court would have to conclude that it can exercise

personal jurisdiction by some other means." Hawknet, 590

F.3d at 92. As there is no quasi in rem or in personam

jurisdiction over CM Minerals, this action will be

dismissed and the Clerk is directed to release the funds
from the Court's Registry to CM Minerals.

## The Requested Stay Is Denied

When deciding whether to grant a stay pending
appeal, the court must consider the following four factors:
"(1) whether the movant will suffer irreparable injury
absent a stay, (2) whether a party will suffer substantial
injury if a stay is issued, (3) whether the movant has
demonstrated a substantial possibility, although less than
a likelihood, of success on appeal, and (4) the public
interests that may be affected." Hirschfield v. Board of
Elections, 984 F.2d 35, 39 (2d Cir. 1993) (internal
quotation marks omitted) (citing Dubose v. Pierce, 761 F.2d
913, 920 (2d Cir. 1985)).

The Second Circuit has granted stays in maritime
cases similar to the instant action where the loss of
provisional security is the alleged irreparable injury.
See, e.g., Eitzen Bulk A/S v. Capex Indus. A/S, No. 09-
1987-cv (2d Cir. June 9, 2009); Centauri Shipping Ltd. v.
Western Bulk Carriers KS, No. 07 Civ. 4193 (2d Cir. 2008).
However, CM Minerals will be prejudiced if a stay is

9

issued, having been deprived of its use of the intercepted
funds for more than eighteen months.  Glorious Shipping has
not demonstrated a substantial possibility of success on
appeal.  Given the decisions in Jaldhi and Hawknet and the
identity of the issuer here, there is little likelihood of
success on appeal.  The public interest factor is neutral.

Based on assessment of the Hirschfield factors,
the requested stay is denied.

**Conclusion**

Upon the facts and conclusions set forth above,
the motion of CM Minerals is granted, the attachment is
vacated, and the Clerk is directed to release the funds in
the Court's Registry.  The action is dismissed.

It is so ordered.

**New York, NY**
**April 29 , 2010**

**ROBERT W. SWEET**
**U.S.D.J.**

10